# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS HEALTH AND WELFARE TRUST, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>PRO-CUT LLC, a Nevada limited liability company,<br><br>Defendant. | 2:12-cv-00205-APG-VCF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

Currently before the Court are Motions for Summary Judgment (Dkt. ##12, 20, 23) filed by both parties.

## BACKGROUND

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1500. Plaintiffs are the Trustees of the Construction Industry and Laborers Health and Welfare Trust, Trustees of the Construction Industry and Laborers Joint Pension Trust, Trustees of the Construction Industry and Laborers Vacation Trust, and Trustees of the Southern Nevada Laborers Local 872 Training Trust (collectively, "Trust Funds"). The Trust Funds are ERISA employee benefit trust funds. (Dkt. #20-2, Exs. 2-5.)

1

On January 24, 1996, B. Witt Concrete Cutting, Inc. ("B. Witt") became a signatory to and bound by the terms of a Collective Bargaining Agreement ("CBA") when it signed a Memorandum Agreement with the Laborers' International Union of North America, Local No. 872 ("Union"). (Dkt. #20-2, Exs. 6-7.) Pursuant to the Memorandum Agreement and the CBA, B. Witt acted as an employer in Nevada employing persons who performed work covered by the CBA between B. Witt and the Union. (Dkt. #20-2, Exs. 6-7.) The CBA incorporates by reference the Trust Agreements establishing the Trust Funds. (Dkt. #20-2, Ex.7, at LAB000053-55.) Under the CBA, B. Witt is obligated to make payments to the Trust Funds on behalf of B. Witt's bargaining unit employees represented by the Union. (Dkt. #20-2, Ex. 7, at LAB000041, LAB000053-55.)

B. Witt failed to make all required contributions to the Trust Funds and on May 24, 2010, a stipulated amended judgment was entered against B. Witt in case No. 2:09-cv-02051 ("Amended Judgment"). (Dkt. #20-2, Ex. 9.) Pursuant to the Amended Judgment, B. Witt was required to make monthly payments to the Trust Funds of $3,500, but ceased making timely payments after January 2011. (Dkt. #20-2, Ex. 1 ¶ 11.)

On April 5, 2011, the Trust Funds sent a notice of default to counsel for B. Witt. (Dkt #20-2, Ex. 10.) In June 2011, B. Witt requested that the monthly payment be reduced from $3,500 to $2,000. (*Id.* ¶ 13.) The Trust Funds rejected the proposal for reduced settlement payments. (*Id.*)

Because B. Witt failed to make all payments, and failed to cure default after notification by the Trust Funds, B. Witt defaulted under the Amended Judgment and became liable for the remaining amount of the judgment, plus interest at 14%. (Dkt. #20-2, Ex. 9 ¶ 11.) In addition, the CBA, the Trust Agreements, the Trust Funds' Collection Policy and Procedures, and 29 U.S.C. §1132(g) provide for payment of audit fees, court costs, expenses, interest, attorney's fees and liquidated damages against a defaulting employer. (Dkt. #20-2, Ex. 1, at ¶ 9; Ex. 2, at LAB000108-109; Ex. 3, at LAB00068; Ex. 4, at LAB000152; Ex. 5, at LAB000194-195; Ex. 8, at LAB000230-231.)

On October 25, 2011, B. Witt informed the Trust Funds that B. Witt had ceased operations. (Dkt. #20-2, Ex. 1 ¶ 16.) Under the Amended Judgment, the Trust Funds retain all obligations under the CBA owed by B. Witt or any trades or businesses under common control with B. Witt. (Dkt. #20-2, Ex. 9 ¶¶ 14, 16.)

Pursuant to the terms of the Amended Judgment, in the event of default and failure to cure, the amount of the Amended Judgment:
> shall be immediately increased by the Liquidated Damage Waiver, any court costs, any attorney's fees and any additional claims accrued and owed by Defendants to the Trust Funds pursuant to this Amended Judgment and the new Judgment amount shall accrue at fourteen percent (14%) default interest on the balance from the default date until paid.

(Dkt. #20-2, Ex. 9 ¶ 11.)

William ("Bill") Witt served as B. Witt's president, treasurer, secretary, and director. (Dkt. #20-2, Ex. 11.) On April 13, 2011, Defendant Pro-Cut LLC ("Pro-Cut") was established with Evelyn Bruns as its registered agent and manager. (Dkt. #20-2, Ex. 12.) Bruns was married to Witt from 1999 until October 2011. (Dkt. #20-2, Ex. 14, Bruns Dep. 20:15 – 20:24.) Bruns was an employee of B. Witt. (*Id.* 17:22 – 18:5.) Pro-Cut listed Witt as its "Employee Qualified Individual" with the Nevada State Contractors Board. (Dkt. #20-3, Ex. 19.) Brett Gilbert and Mark Haley, both former employees of B. Witt, worked at Pro-Cut. (Dkt. #20-2, Ex. 13, Haley Dep. 13:1-15; Dkt. #20-2, Ex. 14, Bruns Dep. 31:1-25.) Margie Boellner, former bookkeeper for B. Witt, performed bookkeeping services for Pro-Cut. (Dkt. #20-2, Ex. 14, Bruns Dep. 40:25-41:22.) Pro-Cut purchased equipment for $23,500 from Witt or Witt's company (Witt Equipment), and issued a joint check to Witt and Witt Equipment on May 14, 2012. (Dkt. #20-2, Ex. 14, Bruns Dep. 54:14-20; Dkt. #20-3, Ex. 21.)

On February 8, 2012, the Trust Funds filed a Complaint against Pro-Cut for delinquent ERISA contributions, alleging that Pro-Cut is an alter ego of B. Witt. On September 28, 2012, Pro-Cut filed a Motion for Summary Judgment (Dkt. #12). On January 7, 2013, the Trust Funds filed a Motion for Summary Judgment (Dkt. #20). On January 8, 2013, Pro-Cut filed a Renewed

3

Motion for Summary Judgment (Dkt. #23). Both parties request summary judgment on the issue of whether Pro-Cut is an alter ego of B. Witt.

## LEGAL STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a

genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. Summary judgment is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999). "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

## DISCUSSION

When a contractor operates one company that is party to a labor agreement and a second company that is nonsignatory, the operations are considered "double-breasted." *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1275 (9th Cir. 1984). Unions may bring unfair labor practice charges against double-breasted operations if the separate companies may be considered a "single employer" or "alter egos" of each other.[1] *Id.* at 1276. The Trust Funds contend that Pro-Cut is an alter ego of B. Witt.

The alter ego doctrine in labor law is "designed to prevent employers from escaping their collective bargaining obligations by shifting work to non-union firms they also own." *UA Local 343 United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the*

---

[1] The alter ego doctrine is related to but separate from the single employer doctrine. The alter ego doctrine applies when the bargaining unit of the signatory company is "effectively the same as that of the nonsignatory company," and therefore evaluates similar factors concerning common operations, management, and ownership. *Stevens*, 743 F.2d at 1276-77. The single employer doctrine, however, requires that the employees of both companies must be shown to constitute a single bargaining unit, which is not required for an application of the alter ego doctrine. *Id.* at 1277. The Trust Funds do not argue that Pro-Cut and B. Witt are a single employer with employees constituting a single bargaining unit.

5

*United States and Canada, AFL-CIO v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1475 (9th Cir. 1994). A successful application of the alter ego doctrine binds the non-union employer to the signatory employer's collective bargaining agreement, and obliges the non-union employer to pay the signatory employer's debt. *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 854 (9th Cir. 2010).

The alter ego doctrine requires proof "(1) that the two firms have 'common ownership, management, operations, and labor relations,' and (2) that the non-union firm is used 'in a sham effort to avoid collective bargaining obligations.'" *Id.* at 852 (*quoting Nor-Cal Plumbing*, 48 F.3d at 1470.) The first factor of the alter ego test requires considering whether the two business entities constitute a single employer due to: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Stevens*, 743 F.2d at 1276. *See also, Nor-Cal Plumbing*, 48 F.3d at 1471. None of these factors is controlling and not all need be present for a finding of alter ego. *Id.* The second factor of the alter ego test focuses on "whether there is an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operation." *Stevens*, 743 F.2d at 1277.

Pro-Cut was formed by Witt's now-ex-wife (Bruns), who was still married to Witt at the time of formation. Bruns formed Pro-Cut shortly after B. Witt defaulted on its obligations under the Amended Judgment. Both B. Witt and Pro-Cut are concrete demolition companies. (Dkt. #20-2, Ex. 14, Bruns Dep. 18:15 – 18:22.) Common ownership may exist when two companies alleged to be alter egos are in the hands of family members. *Massachusetts Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 309 (1st Cir. 1998); *see also J.M. Tanaka Constr., Inc. v. Nat'l Labor Relations Bd.*, 675 F.2d 1029, 1035 (9th Cir. 1982).

Bruns had purchased a new truck when Witt had poor credit, B. Witt was going out of business, and Witt's trucks were being repossessed. (*Id.* 20:2 – 20:14, 23:12 – 23:16.) The truck was initially bought for Witt's use. (*Id.* 23:12 – 23:16.) Bruns testified that she started Pro-Cut on her own, without consulting Witt, in order to pay for the truck's monthly payments.

6

(*Id.* 20:2 – 20:14, 22:16 – 22:19.) Pro-Cut started its operations on property owned by Witt, on the other side of the wall from B. Witt. (Dkt. #29-1, Ex. 1, Bruns Dep. 14:11 – 14: 25.) Bruns was an employee of B. Witt, but did not perform any concrete cutting or work in the field, and admits that she has no knowledge of the concrete cutting industry. (*Id.* 17:22 – 18:14, 24:14 – 24:21.) Bruns relies on Mark Haley and Brett Gilbert to run the business. (*Id.* 24:14 – 24:21.) Haley and Gilbert are former employees of B. Witt. (*Id.* 31:11 – 31: 16, Dkt. #20-2, Ex. 13, Haley Dep. 13:1 – 13:15.) Bruns engaged a bookkeeper for Pro-Cut who had handled bookkeeping for B. Witt. (*Id.* 41:2 – 41:22.) Equipment for Pro-Cut was purchased from Witt and his company, Witt Equipment, with a check payable to "William Witt / Witt Equipment." (Dkt. #20-3, Ex. 21.) On August 15, 2011, B. Witt surrendered its contractor's license, and the next day Pro-Cut obtained a license from the Nevada State Contractors Board listing Witt as its "Employee Qualified Individual." (Dkt. #20-2, Exs. 16, 19.) All of the available evidence shows that the termination of B. Witt as a company and the formation of Pro-Cut happened in a coordinated and calculated manner.

Defendant argues that the Trust Funds have failed to show that Pro-Cut is an alter ego of B. Witt. Specifically, Defendant argues that B. Witt was run by Witt while Pro-Cut is run by Haley, and the owner of B. Witt was Witt while the owner of Pro-Cut is Bruns. The timing of Pro-Cut's formation, coupled with the evidence showing that Pro-Cut engages in the same business as B. Witt, with overlapping employees and equipment, lead to the conclusion that Pro-Cut was created to avoid B. Witt's collective bargaining obligations. While Witt is not the owner of B. Witt, his ex-wife created Pro-Cut during their marriage, which may be an indication of common ownership. *Belmont Concrete Corp.*, 139 F.3d at 309; *see also J.M. Tanaka*, 675 F.2d at 1035. In addition, Bruns' lack of experience in the industry, her relationship with Witt when she allegedly formed Pro-Cut on her own, and Witt's position as an "Employee Qualified Individual" on Pro-Cut's license support the conclusion that Pro-Cut was created with the specific intent of avoiding B. Witt's obligations under the CBA. No reasonable jury could find that Pro-Cut is not the alter ego of B. Witt.

7

The Trust Funds have made a sufficient showing that both factors of the alter ego test have been met. Pro-Cut has failed proffer sufficient, if any, evidence to the contrary, aside from Bruns' testimony that she formed Pro-Cut without consulting Witt, an assertion that is contradicted by copious and credible evidence. Because Pro-Cut has failed to show that any genuine issues of material fact remain, summary judgment on the issue of alter ego must be granted in favor of the Trust Funds. (Dkt. #29-1, Ex. 1, Bruns Dep. 14:11 – 14: 25.)

## CONCLUSION

**IT IS HEREBY ORDERED** that the Trust Funds' Motion for Summary Judgment (Dkt. #20) is **GRANTED**. The Court finds that Pro-Cut LLC is the alter ego of B. Witt Concrete Cutting, Inc. Therefore, judgment is entered in favor of the Trust Funds and against Pro-Cut LLC in the amount of $416,478.00.

**IT IS FURTHER ORDERED** that Pro-Cut's Motions for Summary Judgment (Dkt. #12, 23) are **DENIED**.

DATED this 9th day of August, 2013.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE